This is an action brought by the plaintiff to recover damages for an injury to one of his eyes, which is alleged in the complaint to have been caused by the wrongful and negligent act of the defendant. There is not much dispute about the facts. At the time the injury was received the defendant was a teacher in a public school of Catawba County and the plaintiff was one of his pupils. While the school was in session, and plaintiff's class was reciting one of its lessons, the attention of the plaintiff was attracted by some disturbance in the schoolroom, and when he turned his head to see what it was the defendant threw at him a pencil which he at the time had in his hand. The plaintiff turned his head back just at the time the pencil reached him and it struck him in the eye, inflicting a very painful and serious wound, and causing partial, if not total, blindness. The plaintiff insisted that the act of the defendant in throwing the pencil was done maliciously and that, even if there was no malice, the injury to the plaintiff was a permanent one and, in either view of the case, the defendant was liable to him without regard to any question of negligence or of proximate cause. The defendant contended on the contrary that there was no malice, and that if a permanent injury was the result of the act, he threw the pencil at the plaintiff for the purpose of attracting his attention and in the exercise of his right of correction and discipline, without intending to cause any injury to the plaintiff, and not foreseeing, at the time, that such a result would flow from his act. Without objection, the Court submitted to the jury two issues, as follows: "(1) Did the defendant wrongfully injure plaintiff, as alleged in the complaint? (2) What damage, if any, is plaintiff entitled to recover?"
There were no prayers for instructions asked by the plaintiff. (206) The Court charged the jury as follows: That, if they believed the evidence, they should find "That the defendant was a schoolteacher, and that plaintiff was his pupil and was reciting his lesson at the time *Page 146 
of his alleged injury. A teacher has the authority to inflict upon his pupil such punishment as in his judgment may be necessary for the purpose of correction, and unless such punishment shall seriously endanger the life, limb or health of the pupil, or shall disfigure him or cause some permanent injury to him, or was inflicted not in the honest discharge of his duty as a teacher but under the pretext of duty to gratify his malice, then the teacher would not be responsible for the injury to the child, or if the injury was not the proximate cause of the punishment the teacher would not be responsible therefor." "An act is the proximate cause of an injury either when it is the direct cause thereof, or when the injury is the natural and probable consequence of the act, and when in the exercise of ordinary care an ordinarily prudent person would have foreseen that such consequences would likely be produced thereby. A party is presumed to have intended the necessary as well as the natural and probable consequence of his acts." The Court then explained to the jury what is malice, and further charged them that if the plaintiff was inattentive and defendant threw the pencil at him for the purpose of punishing him, and inflicted a permanent injury upon him, or if he threw the pencil at the plaintiff for the purpose of gratifying his malice, and injured him, and the injury was proximately caused by the throwing of the pencil, they should answer the first issue Yes; but if they found that the pencil was thrown not for the purpose of punishing the plaintiff but to recall his attention to the recitation, and they further found from all the surrounding circumstances that a reasonably prudent man, in the exercise of ordinary (207) care, would not have foreseen that an injury would likely have resulted therefrom, then they should answer the first issue No, although they should further find that the plaintiff was permanently injured, for if injured under such circumstances it was an accident, an accident being an event from a known cause. The jury were further instructed that unless they found from the evidence that plaintiff's injury was the natural and probable consequence of defendant's act in pitching or throwing the pencil, and unless they found that a prudent man might reasonably, or in the exercise of ordinary care, have expected or anticipated that the injury would likely result from the defendant's act, they should answer the first issue No. The Court then gave the defendant's second prayer for instructions, as follows: "Unless you find from the evidence that the plaintiff's injury was the natural and probable consequence of the defendant's act in pitching or throwing the pencil, it will be your duty to answer the first issue No"; and also the defendant's third prayer, as follows: "Unless you find *Page 147 
from the evidence that a reasonably prudent man might reasonably, or in the exercise of ordinary care, have expected or anticipated that the injury complained of would likely result from the defendant's act in throwing or pitching the pencil, you should answer the first issue, No."
The jury answered the first issue "No," and therefore did not answer the second. There was a judgment in accordance with the verdict in favor of the defendant, and the plaintiff appealed.
Several exceptions were taken by the plaintiff to the judge's charge, only two of which we deem it necessary to notice. One of these exceptions is based upon the (208) plaintiff's contention that if he was permanently injured by the act of the defendant he is entitled to recover, whether that act was the proximate cause of the injury or not, or could or could not reasonably have been foreseen. We cannot agree with the plaintiff in this contention. It is undoubtedly true that a teacher is liable if, in correcting or disciplining a pupil, he acts maliciously or inflicts a permanent injury, but he has the authority to correct his pupil when he is disobedient or inattentive to his duties, and any act done in the exercise of this authority and not prompted by malice is not actionable, though it may cause permanent injury, unless a person of ordinary prudence could reasonably foresee that a permanent injury of some kind would naturally or probably result from the act. There is a distinction, we think, between the case of an injury inflicted in the performance of a lawful act and one in which the act causing the injury is in itself unlawful or is, at least, a willful wrong. In the latter case the defendant is liable for any consequence that may flow from his act as the proximate cause thereof, whether he could foresee or anticipate it or not; but when the act is lawful, the liability depends not upon the particular consequence or result that may flow from it, but upon the ability of a prudent man, in the exercise of ordinary care, to foresee that injury or damage will naturally or probably be the result of his act. In the one case he is presumed to intend the consequence of his unlawful act, but in the other, while the act is lawful, it must be performed in a careful manner, otherwise it becomes unlawful, if a prudent man in the exercise of proper care can foresee that it will naturally or probably cause injury to another, though it is not necessary that the evil result should be, in form, foreseen. Cooley, in his work on Torts (2 Ed.), page 74, states the rule *Page 148 
(209) thus: "1. In the case of any distinct legal wrong which in itself constitutes an invasion of the right of another, the law will presume that some damage follows as a natural, necessary and proximate result. Here the wrong itself fixes the right of action; we need not go further to show a right of recovery, though the extent of recovery may depend upon the evidence. 2. When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause. 3. If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." Pollock, in his treatise on Torts, pages 14 to 35, discusses with great clearness and apt illustration this subject of proximate cause in its relation to the liability of persons for civil wrongs, and the following general principles (the most of them expressed in his words) may be gathered therefrom. A tort is an act or omission (not being merely a breach of duty arising out of a personal relation or undertaken by contract) which is related to harm suffered by a determinate person in the following ways: (1) It may be an act which, without lawful justification or excuse, is intended by the agent to cause harm and does cause the harm complained of. (2) (210) It may be an act in itself contrary to law, or an omission of specific legal duty, which causes harm not intended by the person so acting or omitting. (3) It may be an act or omission causing harm which the person so acting or omitting did not intend to cause, but might and should with due diligence have foreseen and prevented. (4) It may, in special cases, consist merely in not avoiding or preventing harm which the party was bound, absolutely or within limits, to avoid or prevent. A special duty of this kind may be (1) absolute, (2) limited to answering for harm which is assignable to negligence. In some positions a man becomes, so to speak, an insurer to the public *Page 149 
against a certain risk, in others he warrants only that all has been done for safety that reasonable care can do.
The commission of an act specifically forbidden by law, or the omission or failure to perform any duty specifically imposed by law, is generally equivalent to an act done with intent to cause wrongful injury. Where the harm that ensues from the unlawful act or omission is the very kind of harm which it was the aim of the law to prevent (and this is the commonest case), the justice and necessity of this rule are manifest without further comment. Even if the mischief to be prevented is not such as an ordinary man would foresee as the probable consequence of disobedience, there is some default in the mere fact that the law is disobeyed (at any rate, a court of law cannot admit discussion on that point), and the defaulter must take the consequences.
"Then we have the general duty of using due care and caution. What is due care and caution under given circumstances has to be worked out in the special treatment of negligence. Here we may say that, generally speaking, the standard of duty is fixed by reference to what we should expect in the like case from a man of ordinary sense, knowledge, and prudence." In cases of tort the primary (211) question of liability may itself depend, and it often does depend, on the nearness or remoteness of the harm or injury, and the liability itself must be founded on an act which is the immediate cause of the harm or injury to a right, the rule of the law being that the proximate, and not the remote, cause is to be regarded. For, says Bacon, "It were infinite for the law to judge the causes of causes, and their impulsions one of another: therefore it contenteth itself with the immediate cause; and judgeth of acts by that, without looking to any further degree." For the purpose therefore of civil liability, in the law of torts, those consequences and those only are deemed immediate and proximate or natural and probable which a person of average competence and knowledge, being in the like case of a person whose conduct is in question and having the like opportunities of observation, might be expected to foresee as likely to follow upon such conduct. This is only where the particular consequence is not known to have been intended or foreseen by the actor. If proof of that be forthcoming, whether the consequence was immediate or not does not matter. That which a man actually foresees is to him, at all events, natural and probable. Pollock on Torts, page 21. In the case of willful or intentional wrongdoing we have an act intended to do harm, and harm done by it and the inference of liability from such an act may seem a plain matter under the general rule of liability, and assuming that no just cause of *Page 150 
exception to it is present, "It is clear law that the wrongdoer is liable to make good the consequences, and it is likewise obvious to common sense that he ought to be. He went about to do harm, and having begun an act of wrongful mischief he cannot stop the risk at his pleasure nor confine it to the precise objects he laid out, but must abide it fully and to the end." The principle is commonly expressed in the maxim that a (212) man is presumed to intend the natural consequences of his acts. The doctrine of natural and probable consequences is most clearly illustrated, however, in the law of negligence, for there the substance of the wrong itself is failure to act with due foresight. It has been defined as "the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do," and, for the purpose of civil liability, the definition is sufficient and adequate, perhaps, to indicate the kind of act, or failure to act, which may be regarded as the immediate or proximate cause of any consequent harm or injury, for the prudent man to whose ideal behavior we are to look as the true standard of duty will be guided by a reasonable estimate of probability and will not neglect what he can forecast as probable, but will order his precaution by the measure of what appears likely in the known course of things. If he fails so to order his conduct and injury results, he is justly held to be the responsible author of it.
While, as we have said, a person charged with negligence is liable only for those injuries which a prudent man in the exercise of care could have reasonably foreseen or expected as the natural and probable consequence of his act or his omission of duty, it must not be supposed that the principle thus stated requires that he should have been able to foresee the injury in the precise form in which it in fact resulted, or to anticipate the particular consequence which actually flowed from his act or omission of duty. "It is not an essential element of negligence that the defendant should have anticipated, or have had reason to anticipate, his carelessness would injure another person. The improbability of injury to another is a circumstance that might be taken into account, but which is not conclusive of the question. If, however, no reasonable person could have anticipated that injury to another (213) might ensue, we think that there could be no negligence. It is certainly not essential that the negligent person should have anticipated injury to the particular person who was in fact injured, or the particular kind of injury produced." 1 Sher. Redf. on Neg. (4 Ed.), section 21. *Page 151 
It is quite sufficient to satisfy the principle and to bring any case within its operation that the party complained of should be able, in the exercise of the care of a man of ordinary prudence, to foresee that harm or injury will result without reference to the particular kind. If he had or should have had this foresight, he is in no better case than the man who intends to do and actually does harm, so far as liability for the natural and probable consequence of his act or conduct is concerned. We believe this to be the doctrine to be gathered from the teachings of the text writers and the decided cases, and the principle that a man is liable for those consequences only which an ordinarily prudent man can foresee as likely to flow from his acts, is, when thus restricted and understood, undoubtedly the correct one. It seems to be in consonance with a just appreciation of the casual connection which should exist between the act and the consequence of it, in order to create civil liability. There is no sound or valid reason, so far as we are able to see, why the very injury that was inflicted by the wrongful or negligent act should have been foreseen, for if the person complained of actually intended any harm to him who was injured by his act, it is conceded that he is liable, without regard to the particular nature of the injury, and there is no way of distinguishing such a case from one in which an act is negligently done which the party doing it could well see at the time would cause harm, or injury in its general sense, to another. There may be a difference in degree but not in principle. In the one case there is an actual intention, while in the other there is an implied intention, which the law (214) will not ordinarily permit to be contradicted, because it is a just and reasonable rule, as it is a maxim of the law that a person is presumed to intend that which is the natural consequence of his act. When therefore a willful wrong is committed or a negligent act which produces injury, the wrongdoer is liable, provided in the latter case he could have foreseen that harm might follow as a natural and probable result of his act, for if he can presume that harm might naturally and probably follow, he must necessarily intend that it should follow or he must have acted without caring whether it would or not, which, in effect, is the same thing. It may be stated as a general rule that when one does an illegal or mischievous act which is likely to prove injurious to another, or when he does a legal act in such a careless or improper manner that he should foresee, in the light of attending circumstances, that injury to a third person may naturally and probably ensue, he is answerable in some form of action for all of the consequences which may directly and naturally result from his conduct. *Page 152 
It is not necessary that he should actually intend to do the particular injury which follows, nor indeed any injury at all, because the law in such cases will presume that he intended to do that which is the natural result of his conduct in the one case, and, in the other, he will be presumed to intend that which, in the exercise of the care of a prudent man, he should see will be followed by injurious consequences. In the case of conduct merely negligent, the question of negligence itself will depend upon the further question whether injurious results should be expected to flow from the particular act. The act, in other words, becomes negligent, in a legal sense, by reason of the ability of a prudent man, in the exercise of ordinary care, to foresee that harmful results will follow its commission. The doctrine is thus expressed, (215) and many authorities cited to support it, in 21 A. E. Ency. Law (2 Ed.), page 487: "In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, even been able to anticipate, the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient, if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected."
It is not essential therefore, in a case like this one, in order that the negligence of a party which causes an injury should become actionable, that the injury in the precise form in which it in fact resulted should have been foreseen. It is enough if it now appears to have been a natural and probable consequence of the negligent act, and the party sought to be charged with liability for the negligence should have foreseen by the exercise of ordinary care that some mischief would be done. 1 Thomp. Com. on Neg., section 59. In determining whether due care has been exercised in any given situation of the party alleged to have been negligent, reference must be had to the facts and circumstances of the case and to the surroundings of the party at the time, and he must be judged by the influence which those facts and circumstances and his surroundings would have had upon a man of ordinary prudence in shaping his conduct if he had been similarly situated. Hill v. Windsor, 118 Mass. 251.
Applying these general principles to the case in hand, we find that the defendant occupied that relation toward the plaintiff, who was his pupil, which entitled him to use such means for the purpose of correction and discipline as in his judgment were required under the circumstances, provided that he neither acted from malice nor inflicted *Page 153 
permanent injury. State v. Pendergrass, 19 N.C. 365, 31 Am. (216) Dec., 416; State v. Long, 117 N.C. 790. The law on this subject is thus well stated: "It is the duty of the teacher to enforce the rules and regulations adopted for the government of a school and to maintain discipline in the school, and in order to maintain discipline and compel obedience to any lawful regulation, the teacher may inflict corporal punishment upon a pupil, since the teacher for the time being stands, to some extent, at least, in loco parentis, and has such a portion of the powers of the parents delegated to him, namely, that of restraint and correction, as may be deemed necessary to answer the purposes for which he is employed." Am. Eng. Ency. (2 Ed.), page 244. And by another writer it is thus stated: "The teacher has the power to enforce obedience to the rules and to his commands. One of the means recognized by the law is corporal chastisement. He may thereby inflict temporary pain, but not seriously endanger life, limb, or health, or disfigure the child, or cause any other permanent injury. He cannot lawfully beat the child, even moderately, to gratify his own evil passions; the chastisement must be honestly inflicted in punishment for some dereliction which the pupil understands. Plainly, if the teacher keeps himself within these limits and his lawful jurisdiction, he must decide the question of the expediency or necessity of the punishment and its degree; it is impossible he should inflict it without." Bishop on Non-Contract Law, section 596, page 269.
If when the case is again tried the jury find that the defendant acted maliciously, he will of course be liable to the plaintiff for the consequent injury and damage, as was fully and clearly explained in the charge of the judge at the last trial; but if he inflicted a permanent injury in attempting to enforce the discipline of his school, and in so doing failed to exercise ordinary care, he will still be liable to the plaintiff if the jury further find that the injury was the natural and probable result of his negligence, and that the defendant, in (217) the light of the attending circumstances and in the exercise of ordinary care, ought reasonably to have foreseen that a permanent injury would be the natural and probable consequence of his act.
The Court had charged the jury correctly, in accordance with the foregoing principles, until it gave the instruction contained in the defendant's third prayer. By that instruction the jury, before they could return a verdict for the plaintiff, were required to find that the defendant was at the time able to foresee, by the exercise of ordinary care, not only that injury would result but that the particular injury which was received by the plaintiff would be the natural and probable *Page 154 
consequence of his act. It is very likely that this instruction had great weight with the jury in deciding the case against the plaintiff, and we can well see how he might have been, and no doubt was, seriously prejudiced thereby. The language of Gaston, J., in State v. Pendergrass, 19 N.C. at page 367, will be appropriate in this connection, as he states the rule of responsibility in such cases with his usual clearness: "We think that the instruction on this point should have been that unless the jury could clearly infer from the evidence that the correction inflicted had produced, or was in its nature calculated to produce, lasting injury to the child, it did not exceed the limits of the power which had been granted to the defendant. We think, also, that the jury should have been further instructed that however severe the pain inflicted, and however in their judgment it might seem disproportionate the alleged negligence or offense of so young and tender a child, yet if it did not produce nor threaten lasting mischief it was their duty to acquit the defendant, unless the facts testified induced a conviction in their minds that the defendant did not act honestly in the performance of duty, according to her sense of right, but, (218) under the pretext of duty, was gratifying malice."
There the liability was made to depend upon the question whether the act charged to have been negligent threatened lasting injury. We can add nothing to what is so well said by that wise and learned judge.
There was error in giving the defendant's third prayer for instruction which entitles the plaintiff to another trial. We cannot consider this error as cured by the other parts of the charge, though in themselves correct. Edwards v. R. R., 129 N.C. 78; S. c., 132 N.C. 101; Williamsv. Haid, 118 N.C. 481; Tillett v. R. R., 115 N.C. 662. The rule in this respect is well settled in those cases.
New trial.
DOUGLAS, J., concurs in result arguendo.
Cited: S. v. Thornton, 136 N.C. 616; Fuller v. R. R., 140 N.C. 484;Rolin v. Tob. Co., 141 N.C. 313; Hudson v. R. R., 142 N.C. 204; Jonesv. R. R., ib., 212; Knott v. R. R., ib., 242; Kimberly v. Howland,143 N.C. 402; Horne v. Power Co., 144 N.C. 382; Sawyer v. R. R.,145 N.C. 28; Horton v. Telephone Co., 146 N.C. 437; Starnes v. Mfg. Co.,147 N.C. 562. *Page 155