TOMMIE A. BOONE, Administrator of the Estate of ESTELLE A. BOONE, Deceased, v. NORTH CAROLINA RAILROAD COMPANY and SOUTHERN RAILWAY COMPANY.

(Filed 28 April, 1954.)

1. **Pleadings § 15—**

Upon demurrer a pleading will be liberally construed with a view to substantial justice between the parties.   G.S. 1-151.

2. **Same—**

A demurrer admits the facts alleged in the pleading and relevant inferences of fact deducible therefrom, but does not admit legal inferences or conclusions of law.

3. **Negligence § 1—**

Negligence is the failure to exercise proper care in the performance of some legal duty which defendant owes the injured party under the circumstances in which they are placed.

4. **Negligence § 5—**

In order to be actionable, negligence must be the proximate cause of injury, which is that cause which produces the injury in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that some injury or harm would probably result.

5. **Same—**

Foreseeability does not require that the particular injury should have been foreseeable.

6. **Negligence § 9½ —**

A person is not required to anticipate negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, may assume, and act on the assumption, that others will exercise ordinary care for their own safety.

7. **Same—**

A party does not forfeit his right to assume that others will exercise ordinary care for their own safety because such party is not altogether free from negligence on his own part.

8. **Railroads § 5—**

The engineer of a train is entitled to assume, and act on the assumption even until the very moment of impact, that trespassers or licensees on the track will use their faculties for their own protection and leave the track in time to avoid injury in the absence of anything which gives or should give him notice that such trespassers or licensees are not in possession of their strength or faculties or are unable to extricate themselves from their dangerous position.

9. **Same—**

A trespasser or licensee on the track is under duty to look as well as listen for the approach of a train, and the fact that a train traveling in one

direction creates so much noise that a trespasser or licensee on the other track cannot hear a train approaching from the opposite direction does not place the duty upon the engineer of that train to anticipate that the trespasser or licensee will negligently fail to look and step off the track in time to avoid injury, in the absence of anything which gives or should give notice to the contrary.

**10. Negligence § 10: Railroads § 5—**

The doctrine of last clear chance does not apply to a trespasser or licensee struck upon the tracks of a railroad when there is nothing to put the engineer upon notice that such trespasser or licensee is not in the apparent possession of his faculties.

**11. Railroads § 5—**

A railroad company owes the duty of ordinary care to avoid injury to persons on highways or private premises near its tracks by objects thrown, projecting or falling from trains.

**12. Railroads §§ 4, 5—Railroad company held not liable to person near track struck by body hurled through the air by impact with engine.**

Plaintiff's allegations were to the effect that his intestate was standing near defendant's track where it crossed a street at grade, waiting with others for the passing of a freight train on the far track of the crossing, that another pedestrian was standing on the near track watching the passing train with his back toward a passenger train approaching from the opposite direction on the near track, that the noise of the freight drowned the noise of the approaching passenger train, and that the passenger train struck this pedestrian and hurled his body 25 feet through the air, so that it struck intestate, who was standing off the right of way, breaking her neck and causing instant death. *Held:* Demurrer was properly sustained, notwithstanding plaintiff's allegations of negligence on the part of the railroad company in regard to excessive speed of the passenger train and the failure of the engineer to keep a proper lookout, since upon the facts alleged, the engineer cannot be held to the duty of anticipating that the pedestrian, apparently in full possession of his faculties, would not look as well as listen, and see the approaching passenger train in time to leave the track before impact, and therefore the complaint fails to state facts upon which foreseeability as an essential element of proximate cause could be predicated.

**13. Same—**

The duty of an engineer to keep a proper lookout is germane only when the doctrine of last clear chance is applicable.

APPEAL by the plaintiff from *Pless, J.,* October Term 1953 of CABARRUS.

Civil action to recover damages for wrongful death, heard on demurrer.

The plaintiff in his complaint alleges in substance: *One,* plaintiff is the duly appointed, acting and qualified administrator of the estate of Estelle A. Boone, who was killed 27 November 1952; and this action was commenced 7 May 1953. *Two,* the North Carolina Railroad Company

(hereafter called Carolina R. R. Co.) and the Southern Railway Company (hereafter called the Southern) are railroad corporations.  *Three,* Carolina R. R. Co. owns a railroad track from Goldsboro to Charlotte, which track passes through Concord, where plaintiff's intestate was killed; and in 1895 it leased this track with all its equipment, all its rights of transportation and all its property to the Southern for 99 years, which lease is duly recorded.  *Four,* McGill Street, one of the main streets of Concord, crosses the railroad tracks of defendants at right angles; Gibson Mill, which at the time was in operation with several hundred employees working on three shifts, is located at the southwest intersection of this street with the railroad tracks.  *Five,* where this street crosses the railroad tracks, the tracks are straight in each direction north and south for about one mile; the tracks approaching the crossing from the north are downgrade; at the crossing are double tracks—the track to the east for northbound trains, the one to the west for southbound trains; electrical signal devices to warn of approaching trains are placed at this crossing.  *Six,* at the northwest intersection of this street and the railroad tracks is a small embankment obstructing the view to the north of a southbound train of a person standing outside of or near the yard gates of Gibson Mill; the embankment does not obstruct the view of the engineer of a southbound train as to the crossing and its surrounding area.  *Seven,* about 11:05 p. m., 27 November 1952, a large number of employees of Gibson Mill finished the second shift, and left the plant, walking east on McGill Street to the crossing; at the time a freight train of the Southern was passing over the crossing going north, causing the electric signal device to signal "stop"; plaintiff's intestate stopped just outside of the gate at the Gibson Mill yard, and well to the west of the southbound track; the passing freight train and electric warning signal device "were making a terrific noise"; a large number of the mill employees were gathered on the west side of the southbound track waiting for the freight train to pass; Walter Nance stopped on the southbound track, while the freight train was passing, and was looking south at the end of the freight train with his back to the north.  *Eight,* at this time a southbound passenger train of Southern, behind its schedule, running 75 to 90 miles an hour, with the engineer not keeping a proper lookout, not making noise sufficient to be heard above the noise of the freight train, without giving any warning signal, without reducing its speed and with the freight train passing over the crossing in an opposite direction proceeded into and over the crossing.  *Nine,* the passenger train struck Walter Nance hurling his body upon plaintiff's intestate standing just outside of the mill gate, breaking her neck and causing instant death.  *Ten,* the engineer could not stop his train until he reached the passenger station about one and one-half miles from the crossing.

The plaintiff alleges as negligence the acts of the engineer above set forth, and further alleges that the engineer of the passenger train failed to exercise due care in approaching the crossing with Walter Nance standing on the track with his back to the north "when to collide with said Walter Nance would imperil the lives of persons to the west of said track waiting to cross same"; that these acts were the proximate cause of his intestate's death.

The defendants demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

The court below sustained the demurrer, and the plaintiff excepted and appealed.

*H. W. Calloway, Jr., and L. E. Barnhardt for Plaintiff, Appellant.*
*Hartsell & Hartsell and William L. Mills, Jr., for Defendants, Appellees.*

Parker, J.  Plaintiff has based his right to recover solely on the ground of negligence.  His complaint must be liberally construed with a view to substantial justice between the parties.  G. S. N. C. 1-151; *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25.  The demurrer admits the truth of factual averments well stated, and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader.  *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440.

Actionable negligence in the instant case does not exist, unless "there has been a failure to exercise proper care in the performance of some legal duty which the defendants owed" plaintiff's intestate, "under the circumstances in which they were placed"; and unless "such negligent breach of duty was the proximate cause" of intestate's death—"a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence" could have reasonably foreseen that some injury or harm would probably result from his act or omission under all the facts as they existed.  *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Hammett v. Miller,* 227 N.C. 10, 40 S.E. 2d 480; *Mikeal v. Pendleton,* 237 N.C. 690, 75 S.E. 2d 756; *Hart v. Curry,* 238 N.C. 448, 78 S.E. 2d 170.

Foreseeability does not require the negligent person should have been able to foresee the particular injury precisely as in fact it occurred, or to anticipate the particular consequences actually flowing from his act or omission. *Hart v. Curry, supra; Drum v. Miller,* 135 N.C. 204, 47 S.E. 421, 65 L.R.A. 890; 108 Am. St. Rep. 528; 38 Am. Jur., Negligence, Sec. 62.

When the result complained of is not reasonably foreseeable in the exercise of ordinary care under all the facts as they existed, an essential element of actionable negligence is lacking. *Roberson v. Taxi Service, Inc.,* 214 N.C. 624, 200 S.E. 363; *Newell v. Darnell,* 209 N.C. 254, 183 S.E. 374.

"One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety, . . ." 65 C. J. S., Negligence, Sec. 15. The quoted words appear in 45 C. J., Negligence, Sec. 86, and are quoted from that work in *Tysinger v. Coble Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246; *Hobbs v. Queen City Coach Co., ibid,* p. 323, 34 S.E. 2d 211. See *Cox v. Freight Lines, supra,* where a large number of our cases are cited; 38 Am. Jur., Negligence, Sec. 192. A party does not forfeit his right to act on this assumption, be- *Ward v. R. R.,* 167 N.C. 148, 83 S.E. 326; *Treadwell v. R. R.,* 169 N.C. *supra.*

It is well settled law in this jurisdiction that when an engineer of a train sees trespassers or licensees, who are in apparent possession of their strength and faculties, and who are not in such a position that they are unable to extricate themselves from a dangerous position, on the track ahead of him, the engineer of the train having no information to the contrary, he is not required to stop his train or even slacken its speed, for the reason that he may assume until the very moment of impact that the pedestrian will use his facilities for his own protection and leave the track in time to avoid injury. The trespasser or licensee must look, as well as listen. *Beach v. R. R.,* 148 N.C. 153, 61 S.E. 664; *Abernathy v. R. R.,* 164 N.C. 91, 80 S.E. 421; *Redmon v. R. R.,* 195 N.C. 764, p. 769, 143 S.E. 829; *Way v. R. R.,* 207 N.C. 799, 178 S.E. 571.

In *Syme v. R. R.,* 113 N.C. 558, 18 S.E. 114, the track of the defendant's railroad ran parallel and in a few feet of the track of another railroad company; the deceased was walking on defendant's track in front of an engine and tender backing in the same direction deceased was going; an engine drawing a long freight train on the neighboring track was "exhausting heavily" as it passed the deceased, and while it was passing deceased, defendant's engine ran over deceased killing him. Counsel for plaintiff did not contend plaintiff's intestate was deficient in any of his senses, or wanting in physical or mental powers; but they did contend that the engineer must have seen the long freight train, known that its engine was "exhausting heavily," so as to render intestate as insensible to the approach of the other train, as if he had been deaf. The court stated it was intestate's duty to look as well as listen, and the engineer was justified in assuming that intestate would clear the track to save himself from

harm, and said: "We are of the opinion that there was no evidence of want of·ordinary care on the part of the defendant."

The speed of the on-coming train or the fact that an engine on another track is exhausting steam, or other disturbing noise is being made, which is calculated to drown the noise of an approaching train, does not put on the engineer of the approaching train the duty of anticipating that a person on the track in front of him will negligently fail to look and to step off the track in time to avoid injury, in the absence of anything which gives or should give notice to the contrary. *High v. R. R.,* 112 N.C. 385, 17 S.E. 79; *Beach v. R. R., supra; Abernathy v. R. R., supra; Ward v. R. R.,* 167 N.C. 148, 83 S.E. 326; *Treadwell v. R. R.,* 169 N.C. 694, p. 698, 86 S.E. 617.

In *Wyrick v. R. R.,* 172 N.C. 549, 90 S.E. 563, plaintiff's intestate was a school girl on her way to school with other girls on a dirt road alongside defendant's right-of-way, and seeing a train approach went upon the track in an intervening cut; the other girls climbed the side of the cut avoiding injury; intestate while leaving the track for a place of safety caught her foot on a switch rod, and was struck and killed by defendant's train. The court after stating that a person apparently in possession of his faculties and in no difficulty will leave the track to avoid harm, and that the engineer has a right to assume this until the last minute said: "There is no evidence in this case of any substantive negligence upon the part of the engineer, which would justify a verdict against the defendant on the first issue."

The doctrine of last clear chance does not apply to trespassers and licensees upon the tracks of a railroad who, at the time, are in apparent possession of their strength and faculties, and nothing to the contrary appearing, the engineer is under no duty under such circumstances of anticipating that such persons will negligently fail to seek a place of safety. *Redmon v. R. R., supra,* where the cases are cited.

In *Trinity & B. V. Ry. Co. v. Blackshear,* 106 Texas 515, 172 S.W. 544, L. R. A. 1915D, 278, the railroad was negligent in allowing spikes holding the rails to be loose or to lie on the ground, but the court held that the railroad could not foresee that a rapidly moving train would pick up a spike and hurl it 50 feet into a field striking Blackshear, who was there ploughing; that the railroad was not negligent, and not liable for the injury it caused.

In *Shaffer v. Minneapolis, St. P. & S. S. M. Ry. Co., et al,* 156 Wis. 485, 145 N.W. 1086, plaintiff was injured in her house 147 feet from a railroad crossing, by a piece of iron being hurled through a window of the house striking her caused by a collision at the crossing of a train and threshing and boiler outfit. The court held there must have been some lack of ordinary care on the railroad's part to subject it to liability, and

they found no such evidence in the record. See also *Welch v. L. & N. R. R. Co.,* 163 Ky. 100, 173 S.W. 338; *Cincinnati, H. & D. Ry. Co. v. Hahn,* 4 Ohio App. 327; *Clardy v. Southern Ry. Co.,* 112 Ga. 37, 37 S.E. 99.

A railroad company owes the duty to use ordinary care to avoid injuring persons on highways or private premises near its tracks. It appears that most of the cases involving this principle of law arise from objects thrown, projecting or falling from trains. However, before the railroad company can be held liable, there must have been actionable negligence on its part. 75 C. J. S., Railroads, Sec. 984; 112 A. L. R. Annotation 850, *et seq.; L. & N. R. R. Co. v. Eaden,* 122 Ky. 818, 93 S.W. 7, 6 L. R. A. (N.S.) 581 and case note p. 581.

Applying the law above stated to the facts alleged in the complaint and such relevant inferences as may be deduced therefrom, we reach this result. There is no allegation in the complaint that Walter Nance was not in full possession of his mental and physical faculties, or that he was in any difficulty on the track. The complaint alleges he was standing on the track. Under the facts alleged the engineer of defendant's train had the right to assume until the moment of impact that Walter Nance would look and step off the track to a place of safety, and the engineer did not forfeit this right because under the facts alleged in the complaint, and admitted to be true by the demurrer, he failed to give any signals of the train's approach—the complaint alleges that the electric warning signal device and the passing freight train were making a terrific noise that "would prevent the said Walter Nance and others from observing the approaching of said passenger train;" the train was travelling 75 to 90 miles per hour; that the engineer failed to keep a proper lookout. It would seem that the failure to keep a proper lookout subjects a railroad to liability only in those cases where the doctrine of last clear chance arises. *High v. R. R., supra.*

To take the position the defendants could foresee that Walter Nance, a man apparently in full possession of all his faculties, in no difficulty, and standing on a live railroad track would negligently fail to perform his duty of looking, and to exercise ordinary care for his own safety by stepping off the track to a place of safety; that Walter Nance would remain on the track until the train struck him, and that his body would be hurled through the air about 25 feet striking plaintiff's intestate well to the west of the southbound track and just outside of the gate to the mill, killing her instantly, would require of the defendants omniscience, and make the defendants insurers of the safety of those near their tracks.

We find in the complaint, most liberally construed, and with every factual averment therein, and all relevant inferences to be deduced therefrom admitted to be true by the demurrer, no allegations of any actionable

negligence against the defendants in the killing of Walter Nance and plaintiff's intestate.

The bizarre and tragic death of the intestate was proximately caused by the negligence of Walter Nance. The trial court was correct in sustaining the demurrer.

Affirmed.